**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JOHN L. WOODS,**                              **CASE NO. 2:07-cv-269**
                                                **JUDGE WATSON**
              **Petitioner,**                   **MAGISTRATE JUDGE ABEL**

**v.**

**J. WOLFE, Warden,**

              **Respondent.**

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, has filed the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition,

respondent's return of writ, petitioner's traverse, and the exhibits of the parties.  For the

reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be

**DISMISSED**.  Petitioner's request for reversal of the decision of the Franklin County Court

of Common Pleas, Doc. No. 13, is **DENIED**.

**FACTS and PROCEDURAL HISTORY**

The Ohio Tenth District Court of Appeals summarized the facts and procedural

history of this case as follows:

> Defendant-appellant, John L. Woods, was indicted on one
> count of aggravated robbery with firearm specification, a
> felony of the first degree in violation of R.C. 2911.01, two
> counts of robbery with firearm specification, felonies of the
> second degree in violation of R.C. 2911.02, one count of
> kidnapping with firearm specification, a felony of the first
> degree in violation of R.C. 2905.01, one count of carrying a
> concealed weapon, a felony of the fourth degree in violation of

R.C. 2923.12, and one count of having a weapon while under disability, a felony of the third degree in violation of R.C. 2923.13. All counts where [sic] tried to a jury, except the count of having a weapon while under disability, which was tried to the court. Appellant appeals the June 14, 2005 judgment of the Franklin County Court of Common Pleas, which entered a judgment of guilty on all counts....

The following facts were adduced at trial. David A. Koonts ("Koonts"), the victim, testified on behalf of the prosecution. In November 2004, Koonts, who is hearing-impaired but can read lips, was employed by Roberts Transfer, which was located on 17th Avenue in Columbus, Ohio. Roberts Transfer's business consisted of taking was material from construction and building renovation from customers and disposing of it by burying it. Koonts was employed to wait for customers to arrive at the 17th Avenue location, allow them to dump the waste material on the property, and hold the customer's payments, which were made by cash or check. Although a trailer was on the site, it was not electrified and one of its windows was broken. Koonts would wait for customers in his pick-up truck, and keep invoices from the transactions in his vehicle as well as the cash and the checks in a cup near the gear shifter.

Koonts was usually the only employee at the 17th Avenue site. The only other employees of Roberts Transfer's 17th Avenue location were truck drivers that would be away from the site for periods up to two and a half hours while delivering waste material. Although Koonts' supervisor was supposed to visit the site daily to pick up the money and checks from Koonts, he usually only visited the site twice a week. Other individuals who were not employees or customers of Roberts Transfer also visited the site. Koonts would allow these individuals to sort through the waste materials and collect scrap metal. They would take the scrap metal to a nearby recycling plant and exchange it for money.

On November 16, 2004, Koonts arrived at work between 5:30 and 5:35 a.m. He was expecting an individual to arrive at 6:00 a.m. to pick up the waste material. Because it was raining,

2

Koonts was waiting in his pick-up truck when appellant approached him. Koonts knew appellant as "Dukem," whom he previously knew from the "Playaz" adult nightclub. Though Koonts considered appellant only an acquaintance, he would engage in friendly conversation with appellant when he saw him. Appellant had been one of the individuals that Koonts allowed to sort through the waste material in the past, but Koonts had told him prior to that morning that he could no longer do so.

Appellant began pounding on Koonts' passenger side window asking for a cigarette. According to Koonts, appellant knew that he had to pound on the window because Koonts would not otherwise hear him. Koonts offered appellant a cigarette and appellant walked around to the driver's side of the truck to take it from him. Appellant often asked Koonts for cigarettes or money for bus fare. After Koonts handed appellant the cigarette, appellant asked to use Koonts' cell phone. Koonts explained to appellant that his cell phone was out of power. Koonts showed appellant the cell phone and how it was charging by using the truck's cigarette lighter. According to Koonts, appellant grabbed the cell phone, breaking the charging cord in the process, and threw the phone back into the truck.

Appellant then asked Koonts for money, but Koonts initially refused. According to Koonts, appellant stated, "come on, Dave, *** I've had it with this shit, *** I want some money." (Tr. 78.) Appellant reached inside of his coat pocket and revealed a firearm in his hand, which he rested on the driver's side windowsill. Koonts stated that he could only see the barrel of the firearm. Koonts first described the firearm as a revolver, but after further questioning, called it an automatic handgun. Appellant again told Koonts that he wanted money. Koonts testified that he was unable to walk or drive away, and was scared that if he did so appellant would shoot him. Appellant knew that Koonts kept Roberts Transfer's money in the cup in his pick-up truck because appellant had watched Koonts give customers change. Koonts told appellant, "you know I don't own that money, just put the gun away." (Tr. 81.) Koonts believed that the firearm was loaded because appellant cocked

3

the gun when Koonts initially refused to give him money.

Koonts testified that he "could tell by from the looks of him that there was something wrong. He didn't look normal to me." (Tr. 81.) Appellant again asked Koonts for the money, so Koonts handed him his wallet. Appellant told Koonts to open it, and Koonts complied by opening his wallet and handing the money to appellant, which amounted to $250. Appellant took the money and placed it into his coat pocket, and then asked for the money in the cup near the gearshift. Koonts testified that he was afraid he would get shot "because of the way he was acting and shaking." (Tr. 82.) At the time, appellant was leaning on the truck's windowsill and pointing the firearm at Koonts. Koonts gave appellant the cup, which contained $1,850.

After appellant took the money from Koonts, he started walking away from Koonts down 17th Avenue. Koonts watched appellant "until he got so far," at which point Koonts began to follow him in his pick-up truck, keeping a distance of approximately 25 yards. (Tr. 83-84.) Koonts continued to follow appellant for about a half-hour until he reached a store on Joyce Avenue, where he disappeared.

Koonts returned to Roberts Transfer. He considered using a pay phone to call for help, but because he knew he would not be able to hear the person he called, he decided to wait for help. Koonts observed a police van between 7:00 and 7:40 a.m., and contacted it by flashing his lights on and off until they came over to him. The police officers told Koonts that they contacted another officer to come assist him. While waiting for that officer, one of the officers stayed with Koonts to complete a report, while the other officer took the police van down 17th Avenue to look for appellant. Officer Sloan ("Sloan") arrived and took Koonts' report. Koonts only knew appellant at the time of the robbery as "Dukem," but told Sloan that he could find out appellant's real name.

After Koonts obtained the name and location of appellant several days later, he contacted Sloan. Sloan came to Roberts Transfer and followed Koonts to the recycling center on Joyce

4

Avenue, approximately three blocks from the 17th Avenue site. After arriving at the recycling center, Koonts identified appellant among a group of individuals surrounding an automobile. The police took appellant into custody without incident.

On cross-examination, Koonts was questioned regarding the amount of money that was stolen. Koonts testified that he told Sloan that appellant took $1,700 that belonged to Roberts Transfer. Appellant further questioned Koonts if he remembered telling another police officer that appellant took $2,100. Koonts explained that he did not tell the police officer that $2,100 was taken, but rather the average amount of money he kept in his possession for Roberts Transfer amounted to $2,100.

Donald Junk ("Junk"), a detective for the Columbus Division of Police, also testified for the prosecution. After Koonts had identified appellant and the police had taken him into custody at the recycling center on Joyce Avenue, Junk interviewed appellant at the Columbus Police Headquarters, Detective Bureau, as part of his investigation. Appellant chose to speak with Junk after waiving his *Miranda* rights. Junk videotaped the entire interview, which was edited and played at trial.

During the interview, appellant denied robbing Koonts. Junk asked where appellant was during the time that Koonts alleged he was robbed. Appellant stated that he was sleeping at the home of the mother of his child, Angie Dickson ("Dickson"). Junk obtained the telephone number of Dickson, left the interrogation room, and called her. Junk returned to the interview room and told appellant that Dickson stated that he had not slept at her house recently, but that he did stop by the day after the robbery. Appellant then offered to "let it all out" to Junk, and told him that Koonts had given him $100 to purchase cocaine powder, but that he kept the $100 and did not return with the cocaine.

At trial, Junk testified regarding his interview with appellant. Over the objection of appellant, Junk was permitted to testify regarding Dickson's statement. Following Junk's testimony

regarding Dickson's statement, the trial court provided a limiting instruction to the jury, which defined and explained hearsay.  The trial court then instructed the jury stating that "whatever Miss Dickson may have said or not said is not being presented here to prove that what she said was true, just to explain the context of the conversation between Detective Junk and Mr. Woods."  The jury then watched the edited videotape of the interview, which included the portion of the interview where Junk communicates Dickson's statement to appellant.

At the close of appellee's case-in-chief, appellant made a Crim.R. 29 motion for acquittal, which the trial court overruled.

Appellant called one witness to testify on his behalf, Michael West ("West").  West testified that he was the owner of "Playaz."  He further testified that he had seen Koonts in his establishment approximately 20 times, and that he had seen Koonts and appellant talking to each other on several occasions.  He additionally testified that he observed them driving away from the establishment two times in Koonts' pick-up truck.  On cross-examination, West testified that he did not know what Koonts and appellant discussed during their conversations, and that the two times they drove off together, they returned to his establishment later in the evening both times.

Appellant did not testify in his own defense.  The jury found appellant guilty on all counts with which it was charged, and the trial court found appellant guilty of having a weapon while under disability.

*Exhibit 5 to Return of Writ.*  Represented by the Franklin County Public Defender as new counsel, petitioner filed a timely appeal.  He asserted the following assignments of error:

1.  The trial court deprived appellant of his Sixth Amendment right to be confronted with the witnesses against him.

2.  Appellant's convictions are against the manifest weight of the evidence.

6

*Exhibit 3 to Return of Writ.* On August 16, 2006, the appellate court affirmed the judgment of the trial court. *Exhibit 5 to Return of Writ.* Still represented by the public defender, petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

> 1. The admission of hearsay testimony that does not fall within a recognized exception to the hearsay rule violates the Confrontation Clause of the Sixth Amendment.
>
> 2. The due process guarantees of the United States and Ohio Constitutions require that criminal convictions be based upon sufficient credible evidence.

*Exhibit 6 to Return of Writ.* On January 24, 2007, the Ohio Supreme Court declines jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. *Exhibit 8 to Return of Writ.*

On March 28, 2007, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Confrontation.
>
> The prosecuting attorney had witnesses that never came to my trial.
>
> 2. Manifest weight of evidence.
>
> The gun that the prosecutor's witness said I had never was showed [sic] in court although I was still charged with carrying a concealed weapon.

It is the position of the respondent petitioner's claims are without merit or not appropriate

for federal habeas corpus review.

## CLAIM TWO

In claim two, petitioner asserts that his convictions are against the manifest weight of the evidence and that the evidence was constitutionally insufficient to sustain his convictions.  *See Traverse*.  Respondent contends that petitioner's claim of insufficiency of the evidence is waived because petitioner failed to raise this same claim in the Ohio Court of Appeals.  *See Return of Writ.*

The record reflects that, although petitioner phrased his claim in the state appellate court as one of manifest weight of the evidence, he did refer to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court's seminal case on sufficiency of the evidence as well as the United States Constitution in support of his argument.  *See Exhibits 3 and 6 to Return of Writ.*  In his appeal before the Ohio Supreme Court, petitioner phrased his claim as one under both federal and Ohio constitutions.  *Exhibit 6 to Return of Writ*. Assuming, therefore, that petitioner thereby properly presented to the state courts a claim of insufficiency of the evidence as well as a claim that his convictions were against the manifest weight of the evidence, preserving both such claims for federal habeas corpus review, neither claim offers petitioner relief.

Petitioner's claim that his convictions are against the manifest weight of the evidence is not appropriate for federal habeas corpus review.  The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a

rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find teach element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a "thirteenth juror" and review the entire record, weight the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. § 2254(e)(1), the

9

state court's factual findings are entitled to a presumption of correctness:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id*. Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

> from [the United States Supreme] Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's
> case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

Here, it appears that the state appellate court addressed solely petitioner's claim that

his convictions were against the manifest weight of the evidence.  Arguably, therefore, this

Court conducts a *de novo* review of petitioner's sufficiency of evidence claim.

> There are three options: the deferential standard [or review]
> provided under § 2254(d); the *de novo* standard, and the
> "intermediate approach." *See Maples v. Stegall,* 340 F.3d 433, 436
> (6th Cir.2003) *(de novo );* Harris v. Stovall, 212 F.3d 940, 943 (6th
> Cir.2000), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d
> 356 (2001) (discussing alternate standards); *McKenzie v. Smith,*
> 326 F.3d 721, 726-27 (6th Cir.2003), *cert. denied,* 540 U.S. 1158,
> 124 S.Ct. 1145, 157 L.Ed.2d 1057 (2004) (same); *Howard v.
> Bouchard,* 405 F.3d 459, 467 (6th Cir.2005) (same). The gist of
> circuit precedent is that when there is a decision, deference is
> accorded under § 2254(d) to the state court decision under the
> "intermediate approach." *Maldonado v. Wilson,* 416 F .3d 470,
> 476 (6th Cir.2005); *Howard,* 405 F.3d at 467. When there is no
> decision or "no results," federal review is *de novo. See Wiggins
> v. Smith,* 539 U.S. at 534, 123 S.Ct. at 2542 *(de novo* when there
> was no state court decision on second prong of *Strickland* test).
> When the state court has failed to articulate a decision or
> provide a rationale, the district court must distinguish between
> a situation of "no results" from that of "no reasoning". *Howard
> v. Bouchard,* 405 F.3d at 467; *McKenzie,* 326 F.3d at 727. As
> illustrated in McKenzie, the "no reasoning" situation occurs
> when the state court has issued a summary order, which fails
> to explain its reasoning, as opposed to the situation where no
> state court has "directly addressed the specific issue." In the
> latter situation there are "no results" for the federal court to
> defer, and de novo review by the federal court is required. See
> *Wiggins v. Smith,* 539 U.S. at 534, 123 S.Ct. at 2542; *McKenzie,*
> 326 F.3d at 727.

11

*Socha v. Wilson,* 447 F.Supp.2d 809, 819 (N.D.Ohio 2007).  Regardless, however, of which standard of review is applied, the claim lacks merit.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia, supra*, 443 U.S. ta 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id*. (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume-even if it does not appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id*. (quoting *Jackson*, at 326).

Petitioner was convicted of aggravated robbery, in violation of O.R.C. §2911.01, which provides in relevant part:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:
>
> (1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;
>
> ***

> (B) Whoever violates this section is guilty of aggravated robbery, an aggravated felony of the first degree.

He also was convicted of two counts of robbery, in violation of O.R.C. §2911.02, which provides:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another.

> (B) Whoever violates this section is guilty of robbery, an aggravated felony of the second degree.

He was convicted of one count of kidnapping, in violation of O.R.C. §2905.01, which provides in relevant part:

> (A) No person, by force, threat, or deception... by any means, shall ... restrain [another] of his liberty, for any of the following purposes:

> ***

> (2) To facilitate the commission of any felony or flight thereafter;

> ***

> (C) Whoever violates this section is guilty of kidnapping, an aggravated felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is an aggravated felony of the second degree.

Additionally, all of the foregoing charges carried a firearm specification; however, the trial court merged all of the foregoing charges at sentencing.  *See Exhibit 2 to Return of Writ*. Petitioner also was convicted of carrying a concealed weapon, in violation of O.R.C.

13

§2923.12, which provides in relevant part:

> (A) No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance.
>
> ***
>
> (D) Whoever violates this section is guilty of carrying concealed weapons, a misdemeanor of the first degree. If the offender previously has been convicted of a violation of this section or of any offense of violence, if the weapon involved is a firearm and the violation of this section is committed at premises for which a D permit has been issued under Chapter 4303. of the Revised Code, if the weapon involved is a firearm which is either loaded or for which the offender has ammunition ready at hand, or if the weapon involved is dangerous ordnance, then carrying concealed weapons is a felony of the third degree. If the offense is committed aboard an aircraft, or with purpose to carry a concealed weapon aboard an aircraft, regardless of the weapon involved, carrying concealed weapons is a felony of the second degree.

Finally, petitioner was convicted of having a weapon while under disability, in violation of O.R.C. §2923.13, which provides in relevant part:

> (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> ***
>
> (2) Such person is under indictment for or has been convicted of any felony of violence, or has been adjudged a juvenile delinquent for commission of any such felony;
>
> (3) Such person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale,

14

administration, distribution, or trafficking in any drug of abuse, or has been adjudged a juvenile delinquent for commission of any such offense;

***

(B) Whoever violates this section is guilty of having weapons while under disability, a felony of the fourth degree.

Viewing the facts, as summarized by Ohio's Tenth District Court of Appeals, in the light most favorable to the prosecution, *Jackson v. Virginia, supra*, this Court concludes that the evidence was constitutionally sufficient to sustain all of the foregoing convictions. Petitioner stipulated to his June 27, 2000, prior burglary conviction used to establish the having a weapon while under disability charge. *Transcript,* at 4, 44.

Claim two is without merit.

## CLAIM ONE

In claim one, petitioner asserts that he was denied the right to confront witnesses against him due to admission of hearsay testimony by Detective Donald Junk that Angie Dickson denied that petitioner had been sleeping at her house, as he initially told police, at the time of the events in question.  Junk testified in relevant part:

A.  I told Mr. Woods that I checked his alibi and that it did not check out.

Q. ... And what was Mr. Woods' reaction to you telling him that the alibi did not check out?

A.  Mr. Woods then told me that Mr. Koonts had given him a

15

> hundred dollars to purchase powder cocaine, that Mr. Woods
> failed to either return the money or bring the cocaine to Mr.
> Koonts.

*Transcript*, at 189.  Upon the objection and request of defense counsel, the trial court

immediately thereafter instructed the jury:

> COURT: Members of the jury...
>
> [T]here have been references to the fact that ... Detective Junk
> made a phone call to Angie Dickson....
>
> ***
>
> and came back with some information from Miss Dickson, it
> hasn't been specifically stated, but came back and told the
> Defendant, your alibi didn't check out, or your information
> didn't check out.  That's not being offered to prove that
> whatever Miss Dickson said was in fact true... but to explain
> what the officer did next in the context of the conversation that
> he had with Mr. Woods.
>
> So whatever Miss Dickson may have said or not said is not
> being presented here to prove that what she said was true, just
> to explain the context of the conversation between Detective
> Junk and Mr. Woods.

*Id.*, at 190-193.  Thereafter, the videotape of petitioner's statement to police was admitted

into evidence including the following relevant statements:

> DETECTIVE JUNK: ... I talked to [Dickson], but she didn't
> verify what you told me.  She said that you stopped by on
> Wednesday, Toya remembered that,, but she said you haven't
> stayed overnight over there in a long time.

\*\*\*

MR. JOHN WOODS: Okay. Now what did Angela say?

DETECTIVE JUNK: Angela said that you stopped by, she remembered you stopping by early one morning. Toya remembered specifically Wednesday, that she said you hadn't stayed overnight over there in a long time.

\*\*\*

So that contradicts what you told me before. I mean, we can argue the day, but the fact is that you told me you'd stayed over there, and she's saying that's not the case....

*Id.*, at 217-218.

The state appellate court rejected petitioner's Confrontation Clause claim as follows:

Appellant asserts that the trial court erred in admitting (1) the testimony of Junk regarding Dickson's statement that appellant was not sleeping at their house on the morning of the robbery, and (2) the out-of-court videotaped statement of Junk communicating to appellant during the police interview that Dickson stated that appellant did not sleep at her house on the morning of the robbery. Appellant asserts that these statements violate his rights under the Confrontation clause of the Sixth Amendment to the United States Constitution. Appellant asserts that these statements are inadmissible under *Crawford v. Washington* (2004), 541 U.S. 36.... because appellant was not permitted to examine Dickson as she was not called as a witness. Appellant argues that these statements were clearly relevant because they contradicted appellant's alibi, but were prejudicial because they impeached appellant though he never testified in his own defense.

Furthermore, appellant asserts that the trial court's limiting

17

instruction explaining to the jury that the statements were "not being presented here to prove that what [Dickson] said was true, just to explain the context of the conversation between Detective Junk and Mr. Woods" failed to cure the error under *Crawford* because it failed to explain what the court meant by "contextual." Appellant contends that the prosecution could have placed the conversation of Junk and appellant into context by having Junk explain what he did that prompted appellant to change his account rather than introducing the statements of Dickson.

In response, appellee asserts that the trial court properly permitted the introduction of the statements because the statements were not hearsay and were only offered to give context to the conversation between Junk and appellant, and not to prove the truth of the matter asserted, but rather to explain Junk's conduct while investigating the crime. Appellee additionally asserts that the statements were contextual because without introduction of the statements, the jury would have been left to speculate as to why appellant first claimed he had an alibi, but then explained to Junk that he had engaged in a transaction for narcotics with Koonts. Finally, appellee argues that the trial court cured any error by giving a lengthy instruction to the jury explaining how the statements could be used.

The United States Supreme Court held in *Crawford, supra,* that out-of-court testimonial hearsay statements by a witness who does not testify at trial are inadmissible against the defendant unless the witness is unavailable to testify at trial and the defendant previously had an opportunity to cross-examine the witness. *Crawford*, at 68. In so holding, the court overruled its previous decision in *Ohio v. Roberts* (1980), 448 U.S. 56... which permitted the admission of statements of unavailable witnesses against criminal defendants if the statements bore "adequate 'indicia of reliability.'" *Crawford, supra*, at 40. The Supreme Court concluded that "[w]here testimonial statements are at issue, the only indicum of reliability sufficient to satisfy constitutional demands is the one that the Constitution actually prescribes: confrontation." *Id.* at 68-69. However, the court

18

specifically noted that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 36, fn. 9, citing *Tennessee v. Street* (1985), 471 U.S. 409, 414....

As we recently stated in *State v. Banks*, 10th Dist. No. 03AP-1286, 2004-Ohio-6522:

> The holding in *Crawford* only applies to statements that are, in fact, hearsay ***. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements that are not intended to prove the truth of what was said are not hearsay. *State v. Davis* (1991), 62 Ohio St.3d 326, at 343....

*Id.* at ¶18.

Ohio courts have previously held that recordings that were not introduced to prove the matter asserted are not hearsay, and thus are admissible and do not violate a defendant's rights under the Confrontation Clause. *State v. Nabozny* (1978), 54 Ohio St.2d 195, 209-210... (tape recorded statement of a victim made by the defendant was not hearsay if offered only to prove that the victim was alive on a date certain); *State v. Smith* (2005), 162 Ohio App.3d 209.... (audiotape of a drug deal between the defendant and a confidential informant who did not testify at trial was admissible and did not violate the Confrontation Clause as it was not hearsay and only offered to provide context to defendant's other admissible statements).

The Sixth Circuit in *United States v. Sexton* (C.A. 6, 2005)... faced a very similar issue to the one at bar. In *Sexton*, police used surveillance and undercover operations to uncover a conspiracy to distribute cocaine. A confidential informant and undercover police offers were used to purchase cocaine on

19

several occasions in which the transaction was audiotaped. Several defendants were arrested for conspiracy to distribute cocaine. The prosecution introduced the audiotapes and the statements of the informant through the testimony of the participating police officers, questioning them regarding the circumstances surrounding the audiotapes. The audiotapes were admitted at trial over the objections of the defendants, even though the informant did not testify at trial. The trial court instructed the jury that the informant's statements could not be used as evidence. The defendants were subsequently convicted.

On appeal, the Sixth Circuit determined that the taped statements were not hearsay because they were not introduced to prove the truth of the matter asserted. Instead, the court found that the statements of the informant were properly admitted because it gave "meaning to the admissible responses" of the police officers. *Sexton, supra*, at 743. The Sixth Circuit also rejected the defendants' Confrontation Clause challenge, determining that:

> When an out-of-court statement is not offered to prove the truth of the matter asserted, as with [the informant's] statements, the Confrontation Clause is not implicated. *Tennessee v. Street*, 471 U.S. 409, 413... (1985); *United States v. Martin*, 987 F.2d at 1372.

> The statements were clearly admissible under the Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36....

*Sexton, supra*, at 743.

Applying the foregoing authority to the case at bar, we determine that the testimony of Junk about Dickson's statement regarding appellant's location on the morning of the robbery and the videotape of Junk relaying Dickson's

statement to appellant during the interview, were not hearsay as they were not offered for the truth of the matter asserted. Instead, they were offered to explain the context behind why appellant first claimed to Junk that he had an alibi, but later recanted his story and offered to "let it all out," and tell Junk that Koonts allegedly gave him money to purchase cocaine. We therefore conclude the statement was admissible under Crawford, supra, and did not violate appellant's Sixth Amendment rights under the Confrontation Clause.

Additionally, the trial court avoided any misuse by the jury of Dickson's statement by providing a lengthy curative instruction explaining that the statements could not be used as evidence. *Street, supra*, at 414. For the above-stated reasons, we determine that the trial court did not abuse its discretion in admitting Dickson's statement. Therefore, appellant's first assignment of error is overruled.

*Exhibit 5 to Return of Writ.* Again, the decision of the state appellate court is entitled to a presumption of correctness. 28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.* Petitioner has failed to establish he is entitled to habeas corpus relief.

As discussed by the state appellate court, the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen,* 397 U.S. 337, 388 (1970). In *Crawford v. Washington,* 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v.Roberts,* 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court held in *Crawford v. Washington, supra,* that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and

the defense had a prior opportunity for cross-examination:

> Where testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination.

*Id.,* at 1366. However,

> [t]he Court explicitly left untouched the application of *Roberts* to cases involving nontestimonial hearsay: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying *Crawford* have observed,

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements.... [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico,* 414 F.Supp.2d 744, 773 (E.D. Michigan 2006), citing *United States v. Hendricks,* 395 F.3d 173, 179 (3d Cir.2005); *Horton v. Allen,* 370 F.3d 75, 83-84 (1st Cir.2004); *United States v. Johnson,* 354 F.Supp.2d 939, 964 (N.D.Iowa 2005); *United States v. Savoca,* 335 F.Supp.2d 385, 391-92 (S.D.N.Y.2004). The Supreme Court declined to spell out a comprehensive definition of the term "testimonial," but stated that, at a minimum, the term includes

> prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the

22

> modern practices with closest kinship to the abuses at which
> the Confrontation Clause was directed.

*Crawford v. Washington, supra,* 124 S.Ct. at 1374. A causal remark to an acquaintance,

business records, and statements made in furtherance of a conspiracy do not constitute

testimonial statements subject to the strictures of the Sixth Amendment. *Id.,* at 13645, 1367.

Further,

> [t]he admission of a testimonial statement in and of itself is not
> enough to trigger a violation of the Confrontation Clause.
> Instead, the statement must be used as hearsay-in other words,
> it must be offered for the truth of the matter asserted.

*United States v. Pugh,* 405 F.3d 390, 399 (6th Cir.2005). A violation of the Confrontation

Clause is subject to harmless error review. *Id.,* at 400, citing *Jordan v. Hurley,* 397 F.3d 360,

363 (6th Cir.2005).

> Unless a constitutional error has a "substantial and injurious
> effect or influence in determining the jury's verdict," *Brecht v.
> Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353
> (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66
> S.Ct. 1239, 90 L.Ed. 1557 (1946)), it will be considered harmless.

*Dorchy v. Jones,* 398 F.3d 783, 791 (6th Cir.2005).

Assuming Dickson's statement to police was testimonial within the meaning of

*Crawford, see Davis v. Washington*, 126 S.Ct. 2266, 2276 (2006);[1] *United States v. Barry-Scott,*

---

[1] Statements are nontestimonial when made in the course of
police interrogation under circumstances objectively
indicating that the primary purpose of the interrogation is to
enable police assistance to meet an ongoing emergency.

23

2007 WL 3129723 (6th Cir. October 25, 2007), citing Crawford, supra, 541 U.S. at 53

("*Crawford* clearly holds that statements resulting from police questioning are testimonial"),

admission of the testimony complained of nonetheless was not constitutionally prohibited

since the statement(s) were not offered for their truth, but to show why petitioner changed

his story to police.

> The admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted. *See id.* at 676. As we stated, "[t]he Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' " *Id.* (citing *Crawford*, 124 S.Ct. at 1369 n. 9).

*United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005).  Further, in view of the trial court's

admonishment to the jury, and petitioner's subsequent change in his story to police,

petitioner was not prejudiced thereby.

Finally, petitioner's entire argument has a faulty premise.  Woods did not offer an

alibi defense at trial.  Indeed, to the extent that he may have relied on his statement to

---

> They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington, supra*, 126 S.Ct. at 2273-74.

Officer Junk, Woods admitted being with Koonts at the time of the robbery. The prosecution argued that the whole case came down to whether the jury believed Koonts' testimony. (R. 375.) When the prosecutor briefly discussed Woods' videotaped statement to Junk, he did not mention the substance of Woods' girlfriend's phone conversation with Junk. (R. 385.)

Petitioner's counsel argued that Woods consistently told the police that there was no robbery, that it was a drug deal. (R. 404 and 407.) He argued that Koonts made up a story about a robbery to cover his taking the money for his own use. (R. 409-10.) Woods' girlfriend's alleged statement to Officer Junk that Woods was not at her house at the time of the robbery was wholly irrelevant to the issues at trial. Woods defense was that Koonts gave him $100 or $200 that morning to buy cocaine and that he lied about the robbery to cover up his own theft. Petitioner did not offer an alibi defense. Even if the Court were to assume a constitutional error, any such error was clearly harmless.

Claim one is without merit.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

s/Mark R. Abel
United States Magistrate Judge